**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| **CANDY STALLWORTH**, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>**ONEBLOOD, INC.**,<br><br>       Defendant. | Case No.: 6:25-cv-00162<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Candy Stallworth ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action lawsuit against Defendant OneBlood, Inc. ("OneBlood" or "Defendant") based on personal knowledge and the investigation of her counsel, and alleges as follows:

## I.    INTRODUCTION

1.    With this action, Plaintiff seeks to hold Defendant responsible for the harms it caused Plaintiff and other similarly situated persons (the "Class" or "Class Members") in a massive and preventable data breach due to Defendant's inadequately protected computer network.[1]

---

[1] *See* Exhibit 1 (Plaintiff's Notice of Data Breach Letter).

CLASS ACTION COMPLAINT

2.     On or around July 28, 2024, OneBlood became aware of suspicious activity within its computer network.[2]

3.     After an investigation, OneBlood determined that between July 14, 2024, through July 29, 2024, certain files and folders containing personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information")—including names and Social Security numbers—were copied from its network without authorization (the "Data Breach" or "Breach").[3]

4.     After the Data Breach, OneBlood inexplicably waited over five (5) months to notify Plaintiff and Class Members that their highly confidential PII and PHI was in the hands of cybercriminals. Defendant did not begin notifying Class Members of the Breach until in or around January 2025.

5.     As a company within the healthcare industry, OneBlood should have known it would be a target for cyberattacks and should have properly protected its networks because of this.

6.     OneBlood collects, processes and distributes blood and blood products to hospitals and patients.[4] By doing so, OneBlood receives the highly sensitive PII and PHI of Plaintiff and the Class. Plaintiff and Class Members provided Defendant

---

[2] *Id.*
[3] *Id.*
[4] *See* https://www.oneblood.org/.

with their Private Information with the understanding that such information would be kept safe from unauthorized access. Alternatively, Plaintiff and Class Members provided their Private Information to healthcare entities who utilize Defendant's services (thereby giving Plaintiff's and the Class's Private Information to Defendant) with the understanding that such information would be kept safe from unauthorized access.

7.      By taking possession and control of Plaintiff's and Class Members' Private Information, Defendant assumed a duty to securely store and protect the Private Information of Plaintiff and the Class.

8.      Defendant breached this duty and betrayed the trust of Plaintiff and Class Members by failing to properly safeguard and protect their Private Information, enabling cybercriminals to access, acquire, appropriate, compromise, disclose, encumber, exfiltrate, release, steal, misuse, and/or view it.

9.      Defendant's misconduct—failing to timely implement adequate and reasonable measures to protect Plaintiff's and Class Members' Private Information, failing to timely detect the Data Breach, failing to take adequate steps to prevent and stop the Data Breach, failing to disclose the material facts that it did not have adequate security practices in place to safeguard the Private Information, and failing to provide timely and adequate notice of the Data Breach—caused substantial harm and injuries to Plaintiff and Class Members across the United States.

CLASS ACTION COMPLAINT

10.    Due to Defendant's negligence and failures, cybercriminals obtained and now possess everything they need to commit personal and medical identity theft and wreak havoc on the financial and personal lives of Plaintiff and the Class, for decades to come.

11.    Plaintiff brings this class action lawsuit to hold Defendant responsible for its grossly negligent—indeed, reckless—failure to use statutorily required and/or reasonable industry cybersecurity measures to protect Class Members' Private Information.

12.    Because Defendant presented such an easy target to cybercriminals, Plaintiff and Class Members have already been subject to violations of their privacy, fraud, and identity theft, and/or have been exposed to a heightened and imminent risk of certainly impending fraud and identity theft.

13.    Thus, as a result of the Data Breach, Plaintiff and Class Members have already suffered damages. For example, now that their Private Information has likely been released into the criminal cyber domains (including the dark web), Plaintiff and Class Members are at imminent and impending risk of identity theft. This risk will continue for the rest of their lives, as Plaintiff and Class Members are now forced to deal with the danger of identity thieves possessing and using their Private Information.

14.    Additionally, Plaintiff and Class Members have already lost time and money responding to and mitigating the impact of the Data Breach, which efforts are continuous and ongoing.

15.    Plaintiff brings this action individually and on behalf of the Class and seeks actual damages and restitution. Plaintiff also seeks declaratory and injunctive relief, including significant improvements to Defendant's data security systems and protocols, future annual audits, long-term credit monitoring services, and other remedies as the Court sees necessary and proper.

## II.    THE PARTIES

16.    Plaintiff **Candy Stallworth** is domiciled in Milton, Florida. Plaintiff received a Notice of Data Breach Letter ("Notice Letter") from OneBlood notifying her that OneBlood determined her name and Social Security number were stolen in the Data Breach.[5]

17.    Defendant **OneBlood, Inc.** is a Florida corporation that has its principal place of business at 8669 Commodity Circle, Orlando, Florida 32819. OneBlood provides services in Florida, Georgia, North Carolina, and South Carolina.[6] As part of Defendant's business, Defendant collect substantial amounts of Private Information. Upon information and belief, the information Defendant collects

---

[5] Ex. 1.

[6] https://www.oneblood.org/our-impact/locations/florida.html.

includes information that qualifies as "Medical information" under the federal Health Information Portability and Accountability Act ("HIPAA") and personally identifiable information.

### III.    <u>JURISDICTION AND VENUE</u>

18.    This Court has diversity jurisdiction over this action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d) because this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least some members of the Class are citizens of states that differ from Defendant.

19.    This Court has personal jurisdiction over Defendant because Defendant conducts a substantial amount of business in this District, is registered to do business in this district, and maintains its principal place of business in this District.

20.    Venue is likewise proper as to Defendant in this District under 28 U.S.C. § 1391(a)(1) because Defendant's principal place of business is in this District and many of Defendant's acts complained of herein occurred within this District.

## IV.    FACTUAL ALLEGATIONS

### A.    Defendant's Massive and Preventable Data Breach.

21.    Defendant is a supplier of blood to 312 hospitals across the United States.[7]

22.    Headquartered in Orlando, Florida, OneBlood operates one of the largest blood centers in the southeastern United States, serving hospitals and healthcare providers across Florida, Georgia, Alabama, South Carolina, and North Carolina.[8]

23.    OneBlood offers a full range of blood donation and transfusion services, including whole blood, platelets, plasma, and red blood cells.[9]

24.    OneBlood employs over 1,500 employees and generates an estimated $685.7 million in annual revenue.[10]

25.    As part of the services Defendant provides, Defendant is entrusted with and obligated to safeguard and protect the Private Information of Plaintiff and the Class in accordance with all applicable laws and industry standards.

26.    Defendant recognized the importance of maintaining adequate data security to protect Plaintiff's and the Class's Private Information and states the

---

[7] https://www.oneblood.org/our-impact/hospital-partners.html.
[8] *Id.*
[9] *Id.*
[10] https://growjo.com/company/OneBlood#google_vignette.

following on its website: "OneBlood (the "Company") is committed to maintaining robust privacy protections for its users."[11]

27.    Despite acknowledging and guaranteeing adequate data security measures and protocols to protect Plaintiff's and the Class's PII and PHI, Defendant failed to spend adequate funds on data security, enriching itself with the cost savings therefrom.

28.    As a result of Defendant's inadequate data security, from July 14, 2024, through July 29, 2024, third-party cybercriminals conducted a successful external system data breach (hacking) whereby they infiltrated Defendant's ineffectually protected computer network and gained unauthorized access to the confidential Private Information of thousands of individuals whose data was stored within Defendant's systems.[12]

29.    OneBlood states it discovered the Breach on July 28, 2024, but failed to issue notice of the Data Breach to the victims until months later.[13]

---

[11] https://www.oneblood.org/privacy-policy.html.
[12] Ex. 1.
[13] *Id.*

CLASS ACTION COMPLAINT

30.    The Notice Letters sent to Plaintiff and the Class state the following:[14]

**What Happened?** On or around July 28, 2024, OneBlood became aware of suspicious activity within its network. We began an investigation to determine the full nature and scope of the event. Our investigation determined that between July 14 to July 29, 2024, certain files and folders were copied from our network without authorization. We conducted a comprehensive review of the affected files to identify the types of information contained in them and to whom the information relates. On or about December 12, 2024, we completed our review and determined that the affected files contained your information.

**What Information Was Involved?** The investigation determined that your name and Social Security number was included in the relevant files and folders.

**What We Are Doing.** We take the confidentiality, privacy, and security of information in our care seriously. In response to this event, we promptly took steps to secure our systems and conducted a detailed investigation to confirm the full nature and scope of the event. We also notified federal law enforcement of this event.

As an added precaution, we are also offering you complimentary access to twelve (12) months of credit monitoring and identity theft restoration services, through TransUnion. Please review the instructions in the attached *Steps You Can Take to Help Protect Your Personal Information* for additional information on these services.

**What You Can Do.** We encourage you to remain vigilant against instances of identity theft and fraud by reviewing your account statements and monitoring your free credit reports for suspicious activity and to detect errors. We also encourage you to review the provided information on steps you can take to protect personal information and to enroll in the identity protection services by following the instruction in the *Steps You Can Take to Protect Your Personal Information* section below.

31.    Upon information and belief, the Private Information contained within Defendant's systems was not encrypted.

32.    Upon information and belief, the unauthorized third-party cybercriminal(s) gained access to the Private Information and engaged in (and will continue to engage in) misuse of the Private Information, including marketing and selling Plaintiff's and Class Members' Private Information on the dark web.

33.    Plaintiff and Class Members were required to provide their Private Information to Defendant with the reasonable expectation and mutual understanding

---

[14]https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/92813c55-137a-4a27-8ae6-bf2c3d52475a.html.

that OneBlood would comply with its obligations to keep such information confidential and secure from unauthorized access.

34.    Accordingly, Defendant had obligations created by HIPAA, reasonable industry standards, common law, statutory law, and its own assurances and representations to keep Plaintiff and Class Members' Private Information confidential and to protect such Private Information from unauthorized access.

35.    Nevertheless, Defendant failed to spend sufficient resources on preventing external access, detecting outside infiltration, and training its employees to identify threats and defend against them.

36.    The stolen Private Information at issue has great value to the hackers, due to the large number of individuals affected and the fact that health insurance information and Social Security numbers were part of the data that was compromised.

37.    Due to Defendant's negligence, Plaintiff and the Class will be at imminent risk of fraud and identity theft for the rest of their lives.

**B.    Plaintiff Stallworth's Experience**

38.    Plaintiff Stallworth entrusted her Private Information to a healthcare entity who utilized OneBlood's services and/or entrusted her Private Information directly to OneBlood. This was done with the reasonable expectation and mutual

understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

39.    Plaintiff received a Notice Letter from OneBlood dated January 9, 2025, informing her that her Private Information was compromised in the Data Breach.[15]

40.    By soliciting and accepting Plaintiff Stallworth's Private Information, Defendant agreed to safeguard and protect it from unauthorized access and delete it after a reasonable time.

41.    Defendant was in possession of Plaintiff Stallworth's Private Information before, during, and after the Data Breach.

42.    Following the Data Breach, Plaintiff Stallworth made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to researching the Data Breach, reviewing and monitoring her accounts for fraudulent activity, and reviewing her credit reports. Plaintiff Stallworth has already spent many hours responding to the Data Breach. Plaintiff Stallworth will be forced to spend additional time to review her credit reports and monitor her accounts for the rest of her life. This is time spent at Defendant's direction, which has been lost forever and cannot be recaptured.

43.    Plaintiff Stallworth has experienced misuse of her Private Information

_____

[15] *See* Exhibit 1.

CLASS ACTION COMPLAINT

after the Data Breach, specifically:

a. In or around October 2024 Plaintiff Stallworth received a phone call from a person impersonating a detective who claimed a family member of hers was in custody and she needed to meet the "detective" at the courthouse with a large sum of money. What made the call particularly concerning is that the individual knew highly personal information about Plaintiff and her family. Plaintiff reasonably believes the individual gained information about her and her family through the Private Information exposed in the Data Breach. Plaintiff called her local police department and reported this incident shortly thereafter.

b. In or around November 2024 and/or December 2024 Plaintiff discovered numerous unauthorized accounts opened in her name and without her authorization on her credit report. Plaintiff reasonably believes the unauthorized accounts were opened using her Private Information that was exposed in the Data Breach.

c. In or around December 2024, an unauthorized individual took control over Plaintiff's T-Mobile account. Plaintiffs believes the individual was able to gain access to her T-Mobile account using the Private Information exposed in the Data Breach.

d. In or around January 2025, Plaintiff received a notice from Experian that her Private Information was exposed on the dark web.

44.    As a result of the foregoing instances of misuse, Plaintiff placed a fraud alert on her credit.

45.    Plaintiff Stallworth places significant value on the security of her Private Information and does not readily disclose it. Plaintiff Stallworth entrusted Defendant with her Private Information with the understanding that Defendant would keep her information secure and would employ reasonable and adequate data security measures to ensure that her Private Information would not be compromised.

46.    Plaintiff Stallworth has never knowingly transmitted unencrypted Private Information over the internet or any other unsecured source.

47.    As a direct and traceable result of the Data Breach, Plaintiff Stallworth suffered actual injury and damages after her Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring her accounts and credit reports for fraudulent activity; (b) loss of privacy due to her Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of her bargain because Defendant did not adequately protect her Private Information; (d) emotional distress because identity thieves now possess her Private Information; (e) imminent and impending injury

13

arising from the increased risk of fraud and identity theft now that her Private Information has been stolen and published on the dark web; (f) diminution in the value of her Private Information, a form of intangible property that Defendant obtained from Plaintiff Stallworth and/or her medical providers; and (g) other economic and non-economic harm.

48.    Plaintiff Stallworth has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for *years* to come. This risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the Private Information stolen in the Data Breach.[16]

49.    Plaintiff Stallworth has a continuing interest in ensuring that her Private Information, which, on information and belief, remains in the possession of Defendant, is protected, and safeguarded from future data breaches. Absent Court intervention, Plaintiff Stallworth's Private Information will be wholly unprotected and at risk of future data breaches.

### C.    Defendant had an Obligation to Protect Private Information Under the Law and the Applicable Standard of Care.

50.    Upon information and belief, Defendant is covered by HIPAA (45 C.F.R. § 160.102). As such, it is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards

---

[16] *Id.*

for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

51.    HIPAA's Privacy Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information, including health information that is kept or transferred in electronic form.

52.    HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

53.    "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

54.    HIPAA's Security Rule requires Defendant to do the following:

    a.    Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

    b.    Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

CLASS ACTION COMPLAINT

      c.     Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

      d.     Ensure compliance by its workforce.

55.    HIPAA also requires Defendant to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e).

56.    Additionally, HIPAA requires Defendant to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

57.    The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, further requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."

58.    Defendant failed to adhere to the HIPAA Breach Notification Rule and did not provide notice of the Data Breach until five (5) months later.

59.    Defendant was also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC")

16

has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

60.    Defendant is further required by various states' laws and regulations to protect Plaintiff's and Class Members' Private Information.

61.    Defendant owed a duty to Plaintiff and the Class to design, maintain, and test its computer and email systems to ensure that the Private Information in its possession was adequately secured and protected.

62.    Defendant owed a duty to Plaintiff and the Class to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including adequately training its employees (and others who accessed Private Information within its computer systems) on how to adequately protect Private Information.

63.    Defendant owed a duty to Plaintiff and the Class to implement processes that would detect a breach on its data security systems in a timely manner.

64.    Defendant owed a duty to Plaintiff and the Class to act upon data security warnings and alerts in a timely fashion.

CLASS ACTION COMPLAINT

65.    Defendant owed a duty to Plaintiff and the Class to adequately train and supervise its employees to identify and avoid any phishing emails that make it past its email filtering service.

66.    Defendant owed a duty to Plaintiff and the Class to disclose if its computer systems and data security practices were inadequate to safeguard individuals' Private Information from theft because such an inadequacy would be a material fact in the decision to entrust Private Information with Defendant.

67.    Defendant owed a duty to Plaintiff and the Class to disclose in a timely and accurate manner when data breaches occurred.

68.    Defendant owed a duty of care to Plaintiff and the Class because they were foreseeable and probable victims of any inadequate data security practices.

**D.    Defendant was on Notice of Cyber Attack Threats and of the Inadequacy of its Data Security.**

69.    Defendant was on notice that companies, including companies operating within and aiding the healthcare industry have been targets for cyberattacks.

70.    Defendant was on notice that the FBI has recently been concerned about data security in the healthcare industry. In August 2014, after a cyberattack on Community Health Systems, Inc., the FBI warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the

18

purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally

Identifiable Information (PII)."[17]

71.    The American Medical Association ("AMA") has also warned

companies about the importance of protecting patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[18]

72.    Defendant was also on notice of the importance of data encryption of

Private Information. Defendant knew it stored Private Information, yet it appears

Defendant did not encrypt the information is stored in its systems and networks.

73.    The United States Department of Health and Human Services' Office

for Civil Rights urges the use of encryption of data containing sensitive personal

information. As long ago as 2014, the Department fined two healthcare companies

approximately two million dollars for failing to encrypt laptops containing sensitive

personal information. In announcing the fines, Susan McAndrew, the DHHS's

---

[17] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, REUTERS (Aug. 2014), http://www.reuters.com/article/2014/08/20/us-cybersecurity-healthcare-fbi-idUSKBN0GK24U20140820.

[18] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, AM. MED. ASS'N (Oct. 4, 2019), https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomeware-attacks-shut-down-clinics-hospitals.

Office of Human Rights' deputy director of health information privacy, stated "[o]ur message to these organizations is simple: encryption is your best defense against these incidents."[19]

74.    As a company operating within the healthcare sector, and a covered entity or business associate under HIPAA, Defendant should have known about its data security weaknesses and sought better protection for the Private Information maintained on its systems and accumulating on its servers.

**E.    Cyber Criminals Will Use Plaintiff's and Class Members' Private Information to Defraud Them.**

75.    Plaintiff and Class Members' Private Information is of great value to hackers and cybercriminals, and the data stolen in the Data Breach will be used in a variety of sordid ways for criminals to exploit Plaintiff and the Class Members and to profit off their misfortune.

76.    Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[20] For example, with the Private Information stolen in the Data Breach, including Social Security numbers, identity thieves can open

---

[19]"Stolen Laptops Lead to Important HIPAA Settlements," U.S. Dep't of Health and Human Services (Apr. 22, 2014), available at https://wayback.archive-it.org/3926/20170127085330/https://www.hhs.gov/about/news/2014/04/22/stolen-laptops-lead-to-important-hipaa-settlements.html.
[20]"Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[21] These criminal activities have and will result in devastating financial and personal losses to Plaintiff and Class Members.

77.    Private Information is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it and trade the information on the cyber black-market for years.[22]

78.    For example, it is believed that certain Private Information compromised in the 2017 Experian data breach was being used, three years later, by identity thieves to apply for COVID-19-related benefits in the state of Oklahoma.[23]

79.    This was a financially motivated Data Breach. Indeed, why else would cybercriminals go through the trouble of hacking a company such as OneBlood if not for financial gain?

---

[21] *See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[22] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/assets/270/262904.htmlu.

[23]    *See* https://www.engadget.com/stolen-data-used-for-unemployment-fraud-ring-174618050.html; *see also* https://www.wired.com/story/nigerian-scammers-unemployment-system-scattered-canary/.

---

80.     The Private Information exposed in this Data Breach is valuable to identity thieves for use in the kinds of criminal activity described herein.

81.     These risks are both certainly impending and substantial. As the FTC has reported, if hackers get access to personally identifiable information, they will use it.[24]

82.     Hackers may not use the accessed information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[25]

83.     Medical-related identity theft is one of the most common, most expensive, and most difficult to prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity

---

[24]Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.

[25] *See Cases Currently Under Investigation,* U.S. DEP'T OF HEALTH & HUMAN SERVS.: BREACH PORTAL, https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf.

thefts reported in the United States in 2013…," which is more than identity thefts involving banking and finance, the government and the military, or education.[26]

84.    As indicated by James Trainor, second in command at the FBI's cyber security division: "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place."[27] A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market.[28]

85.    If cybercriminals manage to steal financial information, health insurance information, and other personally sensitive data—as they did here—there is no limit to the amount of fraud to which Defendant has exposed Plaintiff and Class Members.

86.    As described above, identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit.[29]

---

[26] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/.

[27] IDExperts, *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows*, https://www.idexpertscorp.com/knowedge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat.

[28] *Managing cyber risks in an interconnected world*, PRICEWATERHOUSECOOPERS: Key findings from The Global State of Information Security Survey 2015, https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global-state-of-information-security-survey-2015.pdf.

[29] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

87.    With this Data Breach, identity thieves have already started to prey on the victims, and one can reasonably anticipate this will continue.

88.    Victims of the Data Breach, like Plaintiff and other Class Members, must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their credit because of the Data Breach.[30]

89.    In fact, as a direct and proximate result of the Data Breach, Plaintiff and the Class have suffered, and have been placed at an imminent, immediate, and continuing increased risk of suffering, harm from fraud and identity theft. Plaintiff and the Class must now take the time and effort and spend the money to mitigate the actual and potential impact of the Data Breach on their everyday lives, including purchasing identity theft and credit monitoring services, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

90.    Plaintiff and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

---

[30] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013),       http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

CLASS ACTION COMPLAINT

a.  Trespass, damage to, and theft of their personal property including Private Information;

b.  Improper disclosure of their Private Information;

c.  The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being placed in the hands of criminals and having been already misused;

d.  The imminent and certainly impending risk of having their Private Information used against them by spam callers to defraud them;

e.  Damages flowing from Defendant's untimely and inadequate notification of the data breach;

f.  Loss of privacy suffered as a result of the Data Breach;

g.  Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach;

h.  Ascertainable losses in the form of deprivation of the value of patients' personal information for which there is a well-established and quantifiable national and international market;

i.     The loss of use of and access to their credit, accounts, and/or funds;

j.     Damage to their credit due to fraudulent use of their Private Information; and

k.     Increased cost of borrowing, insurance, deposits, and other items which are adversely affected by a reduced credit score.

91.    Moreover, Plaintiff and Class Members have an interest in ensuring that their information, which remains in the possession of Defendant, is protected from further breaches by the implementation of industry standard and statutorily compliant security measures and safeguards. Defendant has shown itself to be incapable of protecting Plaintiff's and Class Members' Private Information.

92.    Plaintiff and Class Members are desperately trying to mitigate the damage that Defendant has caused them but, given the Private Information Defendant made accessible to hackers, they are certain to incur additional damages. Because identity thieves have their Private Information, Plaintiff and all Class Members will need to have identity theft monitoring protection for the rest of their lives. Some may even need to go through the long and arduous process of getting a new Social Security number, with all the loss of credit and employment difficulties

that come with this change.[31]

93.    None of this should have happened. The Data Breach was preventable.

**F.    Defendant Could Have Prevented the Data Breach but Failed to Adequately Protect Plaintiff's and Class Members' Private Information.**

94.    Data breaches are preventable.[32] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[33] she added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[34]

95.    "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures … Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[35]

---

[31] *Will a New Social Security Number Affect Your Credit?*, LEXINGTON LAW (Nov. 16, 2015), https://www.lexingtonlaw.com/blog/credit-101/will-a-new-social-security-number-affect-your-credit.html.
[32] Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).
[33] *Id.* at 17.
[34] *Id.* at 28.
[35] *Id.*

96.     The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

97.     In 2016, the FTC updated its publication, *Protecting Private Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[36]

98.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for

---

[36] *Protecting Private Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

99.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

100.    These FTC enforcement actions include actions against healthcare providers and partners like Defendant. *See, e.g., In the Matter of Labmd, Inc., A Corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

101.    Defendant failed to properly implement basic data security practices, including those set forth by the FTC.

102.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

103.   Defendant also failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

104.   Defendant required Plaintiff and Class Members to surrender their Private Information, including but not limited to their names, addresses, Social Security numbers, medical information, and health insurance information, and was entrusted with properly holding, safeguarding, and protecting against unlawful disclosure of such Private Information.

105.   Many failures laid the groundwork for the success ("success" from a cybercriminal's viewpoint) of the Data Breach, starting with Defendant's failure to incur the costs necessary to implement adequate and reasonable cyber security procedures and protocols necessary to protect Plaintiff's and Class Members' Private Information.

106.   Defendant was at all times fully aware of its obligation to protect the Private Information of Plaintiff and Class Members. Defendant was also aware of the significant repercussions that would result from its failure to do so.

30

107.    Defendant maintained the Private Information in a reckless manner. In particular, the Private Information was maintained and/or exchanged, unencrypted, in its network that was maintained in a condition vulnerable to cyberattacks.

108.    Defendant knew, or reasonably should have known, of the importance of safeguarding Private Information and of the foreseeable consequences that would occur if Plaintiff's and Class Members' Private Information was stolen, including the significant costs that would be placed on Plaintiff and Class Members as a result of a breach.

109.    The mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to Defendant, and Defendant was on notice that failing to take necessary steps to secure Plaintiff's and Class Members' Private Information from those risks left that information in a dangerous condition.

110.    Defendant disregarded the rights of Plaintiff and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its business email accounts were protected against unauthorized intrusions; (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class Members' Private Information; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing

31

the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

## V.    CLASS ACTION ALLEGATIONS

111.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

112.    Plaintiff brings all claims as class claims under Federal Rule of Civil Procedure 23. Plaintiff asserts all claims on behalf of the Nationwide Class, defined as follows:

### Nationwide Class

All persons residing in the United States who received a Notice of Data Breach Letter from Defendant.

113.    Plaintiff reserves the right to amend the above definitions or to propose alternative or add subclasses in subsequent pleadings and motions for class certification.

114.    The proposed Nationwide Class and Subclass (collectively referred to herein as the "Class" unless otherwise specified) meet the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

115.  **Numerosity:** The proposed Class is believed to be so numerous that the joinder of all members is impracticable. The proposed Subclass is also believed to be so numerous that joinder of all members would be impractical.

116.  **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through Defendant's uniform misconduct. The same event and conduct that gave rise to Plaintiff's claims are identical to those that give rise to the claims of every other Class Member because Plaintiff and each member of the Class had their sensitive Private Information compromised in the same way by the same conduct of Defendant.

117.  **Adequacy:** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class and proposed Subclass that she seeks to represent; Plaintiff has retained counsel competent and highly experienced in data breach class action litigation; and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

118.  **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult, if not impossible, for members of the Class individually to effectively

redress Defendant's wrongdoing. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

119.    **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a.    Whether Defendant engaged in the wrongful conduct alleged herein;

b.    Whether Defendant failed to adequately safeguard Plaintiff's and the Class's Private Information;

c.    Whether Defendant's email and computer systems and data security practices used to protect Plaintiff's and Class Members' Private Information violated the FTC Act, HIPAA, and/or state laws and/or Defendant's other duties discussed herein;

CLASS ACTION COMPLAINT

d.  Whether Defendant owed a duty to Plaintiff and the Class to adequately protect their Private Information, and whether it breached this duty;

e.  Whether Defendant knew or should have known that their computer and network security systems and business email accounts were vulnerable to a data breach;

f.  Whether Defendant's conduct, including their failure to act, resulted in or was the proximate cause of the Data Breach;

g.  Whether Defendant breached contractual duties owed to Plaintiff and the Class to use reasonable care in protecting their Private Information;

h.  Whether Defendant failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class;

i.  Whether Defendant continue to breach duties to Plaintiff and the Class;

j.  Whether Plaintiff and the Class suffered injury as a proximate result of Defendant's negligent actions or failures to act;

35

k.    Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief;

l.    Whether injunctive relief is appropriate and, if so, what injunctive relief is necessary to redress the imminent and currently ongoing harm faced by Plaintiff and members of the Class and the general public;

m.    Whether Defendant's actions alleged herein constitute gross negligence; and

n.    Whether Plaintiff and Class Members are entitled to punitive damages.

## VI.    CAUSES OF ACTION

### COUNT ONE
### NEGLIGENCE
### (On Behalf of the Nationwide Class)

120.    Plaintiff incorporates by reference the allegations in paragraphs 1–119 as though fully set forth herein.

121.    Defendant solicited, gathered, and stored the Private Information of Plaintiff and the Class as part of the operation of its business.

122.    Upon accepting and storing the Private Information of Plaintiff and Class Members, Defendant undertook and owed a duty to Plaintiff and Class

Members to exercise reasonable care to secure and safeguard that information and to use secure methods to do so.

123.    Defendant had full knowledge of the sensitivity of the Private Information, the types of harm that Plaintiff and Class Members could and would suffer if the Private Information was wrongfully disclosed, and the importance of adequate security.

124.    Plaintiff and Class Members were the foreseeable victims of any inadequate safety and security practices on the part of Defendant. Plaintiff and the Class Members had no ability to protect their Private Information that was in Defendant's possession. As such, a special relationship existed between Defendant and Plaintiff and the Class.

125.    Defendant was well aware of the fact that cybercriminals routinely target healthcare entities and entities supporting healthcare entities through cyberattacks in an attempt to steal sensitive personal and medical information.

126.    Defendant owed Plaintiff and the Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing personal information, including taking action to reasonably safeguard such data and providing notification to Plaintiff and the Class Members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

127.    Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures also have recognized the existence of a specific duty to reasonably safeguard personal information.

128.    Defendant had duties to protect and safeguard the Private Information of Plaintiff and the Class from being vulnerable to cyberattacks by taking common-sense precautions when dealing with sensitive Private Information. Additional duties that Defendant owed Plaintiff, and the Class include:

a.    To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, email accounts, protocols, policies, procedures, and practices to ensure that Plaintiff's and Class Members' Private Information was adequately secured from impermissible release, disclosure, and publication;

b.    To protect Plaintiff's and Class Members' Private Information in its possession by using reasonable and adequate security procedures and systems;

38

      c.      To implement processes to quickly detect a data breach, security incident, or intrusion involving its business email system, networks, and servers; and

      d.      To promptly notify Plaintiff and Class Members of any data breach, security incident, or intrusion that affected or may have affected their Private Information.

129.   Only Defendant was in a position to ensure that its systems and protocols were sufficient to protect the Private Information that Plaintiff and the Class had entrusted to them.

130.   Defendant breached its duty of care by failing to adequately protect Plaintiff's and Class Members' Private Information. Defendant breached its duties by, among other things:

      a.      Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, deleting, and protecting the Private Information in its possession;

      b.      Failing to protect the Private Information in its possession by using reasonable and adequate security procedures and systems;

      c.      Failing to adequately and properly audit, test, and train its employees to avoid phishing emails;

d.   Failing to use adequate email security systems, including healthcare industry standard SPAM filters, DMARC enforcement, and/or Sender Policy Framework enforcement to protect against phishing emails;

e.   Failing to adequately and properly audit, test, and train its employees regarding how to properly and securely transmit and store Private Information;

f.   Failing to adequately train its employees to not store Private Information longer than absolutely necessary;

g.   Failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class's Private Information;

h.   Failing to implement processes to quickly detect data breaches, security incidents, or intrusions;

i.   Failing to promptly notify Plaintiff and Class Members of the Data Breach that affected their Private Information.

131.   Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

132.   As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

40

133.   Through Defendant's acts and omissions described herein, including but not limited to Defendant's failure to protect the Private Information of Plaintiff and Class Members from being stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure the Private Information of Plaintiff and Class Members while it was within Defendant's possession and control.

134.   Further, through Defendant's failure to provide timely and clear notification of the Data Breach to Plaintiff and Class Members, Defendant prevented Plaintiff and Class Members from taking meaningful, proactive steps toward securing their Private Information and mitigating damages.

135.   As a result of the Data Breach, Plaintiff and Class Members have spent time, effort, and money to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, responding to fraudulent activity, closely monitoring bank account activity, and examining credit reports and statements sent from providers and their insurance companies. This is in addition to the identity theft and fraud Plaintiff alleged.

136.   Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

137.    The damages Plaintiff and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

138.    In addition to its duties under common law, Defendant had additional duties imposed by statute and regulations, including the duties under HIPAA and the FTC Act. The harms which occurred as a result of Defendant's failure to observe these duties, including the loss of privacy, lost time and expense, and significant risk of identity theft are the types of harm that these statutes and regulations intended to prevent.

139.    Defendant violated these statutes when it engaged in the actions and omissions alleged herein, and Plaintiff's and Class Members' injuries were a direct and proximate result of Defendant's violations of these statutes. Plaintiff therefore is entitled to the evidentiary presumptions for negligence *per se*.

140.    Pursuant to the FTC Act, 15 U.S.C. § 45(a), Defendant owed a duty to Plaintiff and the Class to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiff and the Class.

141.    The FTC Act prohibits "unfair practices in or affecting commerce," including, as interpreted, and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect

CLASS ACTION COMPLAINT

Private Information. The FTC publications and orders described above also formed part of the basis of Defendant's duty in this regard.

142.   Defendant gathered and stored the Private Information of Plaintiff and the Class as part of its business, which affects commerce.

143.   Defendant violated the FTC Act by failing to use reasonable measures to protect the Private Information of Plaintiff and the Class and by not complying with applicable industry standards, as described herein.

144.   Defendant breached its duties to Plaintiff and the Class under the FTC Act, and HIPAA by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard Plaintiff's and Class Members' Private Information, and by failing to provide prompt and specific notice without reasonable delay.

145.   Plaintiff and the Class are within the class of persons that HIPAA and the FTC Act were intended to protect.

146.   The harm that occurred as a result of the Data Breach is the type of harm the FTC Act and HIPAA were intended to guard against.

147.   Defendant breached its duties to Plaintiff and the Class under these laws by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and the Class's Private Information.

CLASS ACTION COMPLAINT

148.    Additionally, Defendant had a duty to promptly notify victims of the Data Breach. Defendant did not begin notifying Plaintiff or Class Members of the Data Breach until January 2025. Defendant, however, knew of the Data Breach by July 2024.

149.    Defendant breached its duties to Plaintiff and the Class by unreasonably delaying and failing to provide notice of the Data Breach expeditiously and/or as soon as practicable to Plaintiff and the Class.

150.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered, and continue to suffer, damages arising from the Data Breach, as alleged above.

151.    The injury and harm that Plaintiff and Class Members suffered (as alleged above) was the direct and proximate result of Defendant's negligence.

152.    Plaintiff and the Class have suffered injury and are entitled to actual and punitive damages in amounts to be proven at trial.

## COUNT TWO
## UNJUST ENRICHMENT
### (On Behalf of the Nationwide Class)

153.    Plaintiff incorporates by reference the allegations in paragraphs 1–119 as though fully set forth herein.

154.    Plaintiff and the Class bring this claim in the alternative to all other claims and remedies at law.

CLASS ACTION COMPLAINT

155.    Through the use of Defendant's services, Defendant received monetary benefits from Plaintiff and the Class.

156.    Defendant collected, maintained, and stored the Private Information of Plaintiff and Class Members and, as such, Defendant had direct knowledge of the monetary benefits conferred upon it.

157.    Defendant, by way of its affirmative actions and omissions, including its knowing violations of its express or implied contracts with Plaintiff and Class Members, knowingly and deliberately enriched itself by saving the costs it reasonably and contractually should have expended on HIPAA compliance and reasonable data privacy and security measures to secure Plaintiff's and Class Members' Private Information.

158.    Instead of providing a reasonable level of security, training, and protocols that would have prevented the Data Breach, as described above and as is common industry practice among companies entrusted with similar Private Information, Defendant, upon information and belief, instead consciously and opportunistically calculated to increase its own profits at the expense of Plaintiff and Class Members.

159.    As a direct and proximate result of Defendant's decision to profit rather than provide adequate data security, Plaintiff and Class Members suffered and continue to suffer actual damages, including (i) the amount of the savings and costs

Defendant reasonably and contractually should have expended on data security measures to secure Plaintiff's Private Information, (ii) time and expenses mitigating harms, (iii) diminished value of Private Information, (iv) loss of privacy, (v) harms as a result of identity theft; and (vi) an increased risk of future identity theft.

160.    Defendant, upon information and belief, has therefore engaged in opportunistic, unethical, and immoral conduct by profiting from conduct that it knew would create a significant and highly likely risk of substantial and certainly impending harm to Plaintiff and the Class in direct violation of Plaintiff's and Class Members' legally protected interests. As such, it would be inequitable, unconscionable, and unlawful to permit Defendant to retain the benefits it derived as a consequence of its wrongful conduct.

161.    Accordingly, Plaintiff and the Class are entitled to relief in the form of restitution and disgorgement of all ill-gotten gains, which should be put into a common fund to be distributed to Plaintiff and the Class.

## COUNT THREE
## BREACH OF IMPLIED CONTRACT
### (On Behalf of the Nationwide Class)

162.    Plaintiff incorporates by reference the allegations in paragraphs 1–119 as though fully set forth herein.

163.    When Plaintiff and the Class Members provided their Private Information to Defendant, they entered into implied contracts in which Defendant

agreed to comply with statutory and common law duties to protect Plaintiff's and Class Members' Private Information and to timely notify them in the event of a data breach.

164. Defendant required Plaintiff and Class Members to provide their Private Information in order for them to receive medical related services.

165. Based on the implicit understanding, Plaintiff and the Class accepted Defendant's offers and provided Defendant with their Private Information.

166. Plaintiff and Class Members would not have provided their Private Information to Defendant had they known that Defendant would not safeguard their Private Information, as promised, or provide timely notice of a data breach.

167. Plaintiff and Class Members fully performed their obligations under their implied contracts with Defendant.

168. Defendant breached the implied contracts by failing to safeguard Plaintiff's and Class Members' Private Information and by failing to provide them with timely and accurate notice of the Data Breach.

169. The losses and damages Plaintiff and Class Members sustained (as described above) were the direct and proximate result of Defendant's breach of implied contracts with Plaintiff and Class Members.

## COUNT FOUR
## DECLARATORY RELIEF
### (On Behalf of the Nationwide Class)

170.   Plaintiff incorporates by reference the allegations in paragraphs 1–119 as though fully set forth herein.

171.   This count is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

172.   As previously alleged, Plaintiff and members of the Class entered into implied contracts with Defendant, which contracts required Defendant to provide adequate security for the PII/PHI collected from Plaintiff and the Class.

173.   Defendant owed and still owe a duty of care to Plaintiff and Class Members that require them to adequately secure Plaintiff' and Class Members' PII/PHI.

174.   Upon reason and belief, Defendant still possess the PII/PHI of Plaintiff and the Class Members.

175.   Defendant has not satisfied its contractual obligations and legal duties to Plaintiff and the Class Members.

176.   Since the Data Breach, Defendant have not yet announced any changes to its data security infrastructure, processes, or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and go undetected and, thereby, prevent further attacks.

177. Defendant has not satisfied its contractual obligations and legal duties to Plaintiff and the Class. In fact, now that Defendant's insufficient data security is known to hackers, the PII/PHI in Defendant's possession is even more vulnerable to cyberattack.

178. Actual harm has arisen in the wake of the Data Breach regarding Defendant's contractual obligations and duties of care to provide security measures to Plaintiff and the members of the Class. Further, Plaintiff and the members of the Class are at risk of additional or further harm due to the exposure of their PII/PHI and Defendant's failure to address the security failings that led to such exposure.

179. There is no reason to believe that Defendant's security measures are any more adequate now than they were before the Data Breach to meet Defendant's contractual obligations and legal duties.

180. Plaintiff and the Class, therefore, seek a declaration (1) that Defendant's existing security measures do not comply with its contractual obligations and duties of care to provide adequate security, and (2) that to comply with its contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to:

    a. Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and

audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

b. Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

c. Ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures;

d. Ordering that Defendant segment employee data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, hackers cannot gain access to other portions of Defendant's systems;

e. Ordering that Defendant purge, delete, and destroy, in a reasonably secure manner, customer data not necessary for its provisions of services;

f. Ordering that Defendant conduct regular database scanning and security checks; and

g. Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

CLASS ACTION COMPLAINT

## VII.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class pray for judgment against Defendant as follows:

a.    An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b.    A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual damages, restitution, attorney fees, expenses, costs, and such other and further relief as is just and proper.

c.    An order providing injunctive and other equitable relief as necessary to protect the interests of the Class and the general public as requested herein, including, but not limited to:

i.    Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct

51

any problems or issues detected by such third-party security auditors;

ii.    Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

iii.   Ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures;

iv.    Ordering that Defendant segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, hackers cannot gain access to other portions of Defendant's systems;

v.     Ordering that Defendant cease transmitting Private Information via unencrypted email;

vi.    Ordering that Defendant cease storing Private Information in email accounts;

vii.   Ordering that Defendant purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services;

CLASS ACTION COMPLAINT

      viii.   Ordering that Defendant conduct regular database scanning and securing checks;

      ix.   Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

      x.   Ordering Defendant to meaningfully educate current, former, and prospective employees and subcontractors about the threats faced as a result of the loss of financial and personal information to third parties, as well as the steps they must take to protect against such occurrences;

d.   An order requiring Defendant to pay the costs involved in notifying the Class Members about the judgment and administering the claims process;

e.   A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

f.   An award of such other and further relief as this Court may deem just and proper.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

DATE:  January 31, 2025                  Respectfully submitted,

By:    */s/ Mariya Weekes*
Mariya Weekes (FL State Bar No. 56299)
Lead Counsel
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2nd Floor
Coral Gables, FL 33134
Tel: (786) 879-8200
Fax: (786) 879-7520
mweekes@milberg.com

Tanner R. Hilton*
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
T: (405) 235-1560
F: (405) 239-2112
E: trh@federmanlaw.com

*Pro Hac Vice Application Forthcoming*

***Counsel for Plaintiff and the Proposed Class***

CLASS ACTION COMPLAINT